UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PATTERSON,

    Petitioner,

                              CASE NO. 2:08-CV-12041

v.                                HONORABLE MARIANNE O. BATTANI
                                UNITED STATES DISTRICT JUDGE

LINDA METRISH,

    Respondent.
_____/

## OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michael Patterson, ("Petitioner"), confined at the Macomb Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his Wayne Circuit Court conviction for two counts of second-degree murder, MICH. COMP. LAWS 750.317, assault with intent to commit murder, MICH. COMP. LAWS 750.83, and three counts of possession of a firearm during the commission of a felony. MICH. COMP. LAWS 750.227b. Petitioner was sentenced to two 50-to-90 year terms for the murder convictions, a concurrent term of 40-to-75 years for the assault conviction, and consecutive 2-year terms for the firearm convictions. For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

### I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

    On July 23, 2003, defendant shot Courtney Harris, Tamara Harris, and Carey

1

> Christie at the Harris family home. Defendant and Courtney Harris had a tempestuous three-year relationship where they frequently argued, broke-up, and got back together. They also had a son together, Coryan. Defendant spent many nights a week at Courtney's house, even though he formally resided with the Gaiter family around the corner. On the day of the shootings, Courtney and defendant had been arguing throughout the day.
>
> The shootings of Tamara and Christie were fatal. Each had two bullet wounds to the head, one of which was sustained at close range. Courtney had bullet fragments in her right frontal lobe due to the shooting, and her left ring finger was nearly detached. Defendant's friend, 17-year-old Donovan Payne, testified that defendant stated that he was going to kill Courtney. After the shootings, defendant realized that he had done something wrong, and thirty minutes later, he turned himself in at the police station.

*People v. Patterson*, 2007 Mich. App. LEXIS 45 (Mich. Ct. App. Jan. 11, 2007)

Petitioner appealed his conviction to the Michigan Court of Appeals. His appellate brief raised two claims: (1) the trial court erroneously failed to instruct the jury on the lesser offense of manslaughter, and (2) the trial court erroneously prevented Petitioner from introducing defense evidence. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Patterson, supra.* Petitioner filed an application for leave to appeal in the Michigan Supreme Court that raised the same two claims. The application was denied by form order. *People v. Patterson*, 731 N.W.2d 713 (Mich. May 30, 2007).

Petitioner now seeks a writ of habeas corpus based on two claims:

> I. The failure to instruct appellant's jury regarding the lesser offense of voluntary manslaughter constitutes reversible error.
>
> II. Appellant was denied his constitutional right to present evidence in support of his defense.

## II. **Standard of Review**

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. Discussion

### A. Failure to Instruct Jury on Manslaughter.

In his first habeas claim, Petitioner alleges that the trial court erred when it denied his request for a jury instruction on manslaughter. The Michigan Court of Appeals thoroughly reviewed this claim and rejected it on the merits:

> The trial court properly denied defendant's request for an instruction on voluntary manslaughter because a rational view of the evidence did not support an instruction. A criminal defendant has the right to have a properly instructed jury. *People v. Rodriguez*, 463 Mich. 466, 472; 620 N.W.2d 13 (2000). "[I]nstructions must include all elements of the crime charged and must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence." *People v. Kurr*, 253 Mich. App. 317, 327; 654 N.W.2d 651 (2002). A defendant's request for a jury "instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v. Cornell*, 466 Mich. 335, 357; 646 N.W.2d 127 (2002). Manslaughter, both voluntary and involuntary, is a lesser included offense of murder. *People v. Mendoza*, 468 Mich. 527, 540-541; 664 N.W.2d 685 (2003). "Consequently, when a defendant is charged with murder, an instruction for voluntary . . . manslaughter must be given if supported by a rational view of the evidence." *Id*. at 541.
>
> The element that distinguishes murder from manslaughter is malice. *People v. Gillis*, 474 Mich 105, 138; 712 N.W.2d 419 (2006). To prove voluntary manslaughter, a prosecutor must show that the defendant killed in the heat of passion, that the passion was caused by adequate provocation, and that there was not a lapse of time during which a reasonable person could have controlled his passions. *People v. Tierney*, 266 Mich. App. 687, 714; 703 N.W.2d 204 (2005). "[P]rovocation is the circumstance that negates the presence of malice." *Mendoza, supra* at 536. "The degree of provocation required to mitigate a killing from murder to manslaughter 'is that which causes the defendant to act out of passion rather than reason'" and "'that which would cause a reasonable person to lose control.'" Tierney, supra at 714-715, quoting People v Sullivan, 231 Mich. App. 510, 518; 586 N.W.2d 578 (1998), aff'd 461 Mich. 992 (2000). But "[n]ot every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter." People v Pouncey, 437 Mich. 382, 389; 471 N.W.2d 346 (1991).
>
> In this case, defendant claims that the existing record supports a voluntary manslaughter instruction because the evidence is sufficient to establish that he may

4

have acted out of passion rather than reason. The shootings arose out of the circumstances surrounding the tumultuous three-year relationship defendant had with Courtney. At the time of the shootings, Courtney was defendant's girlfriend, and she is also the mother of defendant's son, Coryan.

At trial, defendant introduced evidence of his volatile relationship with Courtney. Defendant explained that during the last three years, Courtney had repeatedly called and hung up on him. Courtney stated at trial that on the day of the shootings, she had called defendant to make him angry. At trial, defendant claimed that he considered his relationship with Courtney to be exclusive, but in the past three years, he had witnessed Courtney having sexual relations with other men. According to defendant, this made him feel low and angry. Defendant testified that when he and Courtney had an argument, she would taunt him by saying that Coryan was not his son. Defendant confessed that, long before the shootings occurred, defendant had been involved in an altercation with one of Courtney's male friends, Julius, because defendant felt disrespected when he saw the male friend pick up defendant's son. Defendant stated that he knew about Christie being a male friend of Courtney's because at some time in the past he had found a letter from Christie to Courtney on Courtney's dresser. Defendant said that in the past Courtney had told defendant that Christie was a drug dealer and that Christie would kill defendant. At trial, defendant's sister, Sharea Patterson, testified that sometime after the shootings, Courtney had told her that Courtney felt guilty for having tried to create a fight between Christie and defendant the day of the shootings.

Defendant asserts on appeal that on the day of the shootings, there was already an ongoing fight between him and Courtney that fueled defendant's passions. That morning, sometime before 12:00 p.m., defendant and Courtney argued over money for diapers. Later that day, sometime before 3:00 p.m., defendant and Courtney had a telephone conversation where Courtney threatened to tell the police that defendant had pointed a gun at her face the previous week. Defendant did own a gun that he and Courtney had hidden between the mattress and the wall in Courtney's room. Defendant testified that 30 minutes after this telephone conversation, he returned to Courtney's house to retrieve the gun because he was afraid that Courtney would tell the police that he had a gun. In the meantime, Christie called and although he did not mention that he would stop by, he showed up at Courtney's house about five minutes before defendant.

Defendant contends that he saw Christie holding Coryan. This made defendant feel disrespected and a physical confrontation ensued between the two men. Defendant testified that at that point, he shot Christie, Tamara, and Courtney out of jealousy and rage. Courtney testified that Christie was merely at her house when defendant came over and that Christie went out and sat in the living room, where defendant then shot him.

5

The trial court correctly ruled that while defendant was jealous and had a volatile relationship with Courtney, the events leading up to the shooting did not constitute adequate provocation for defendant to shoot Christie, Tamara, and Courtney out of the heat of passion. The events that occurred that day were not atypical of defendant and Courtney's three-year relationship. The evidence demonstrates that: they fought frequently; defendant knew that Courtney saw other male friends; and defendant had seen at least one male friend aside from Christie pick up Coryan. Even if these factors angered defendant, they were not of such an extraordinary nature that they would cause a reasonable person to lose control.

Regardless of whether Christie and defendant had a physical confrontation that day, there still was not adequate provocation to justify defendant fatally shooting Tamara and Christie and shooting Courtney three times. Defendant even testified that nothing provoked him to shoot Tamara, other than that he heard a noise and started firing. Again, "[n]ot every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter." *Pouncey, supra* at 389.

Further, on the day of the shootings, there was a lapse of time during which a reasonable person could have controlled his passions before executing the shootings. At least three hours elapsed between Courtney and defendant's argument over the diapers and when defendant returned to Courtney's house to retrieve his gun. Even if Courtney's threatening phone call had angered defendant, he did not return to her house for 30 minutes.

And even if defendant had a physical confrontation with Christie when he returned to Courtney's house, there was still a lapse of time during which a reasonable person could have controlled his passions. After defendant's confrontation with Christie, defendant had to retrieve the gun from between the mattress and the wall in Courtney's room, walk to where Christie was, cock the trigger, and pull the trigger to release the hammer and fire. Defendant would have had to consciously apply three and three-quarter pounds of pressure to hit the threshold where the gun would fire. Defendant delivered one shot to Christie at close range, while the other shot defendant delivered was with the gun pressed up to Christie's scalp. Defendant did not fire instantaneously or randomly, but deliberately. Defendant had time to consider his target and there was a sufficient lapse of time during which a reasonable person could have controlled his passions before firing.

Defendant also shot Tamara twice and Courtney three times. The Pontiac Police recovered at least 11 cartridges that had been fired from defendant's gun, but defendant's gun held only six bullets. So after defendant fired the first six shots, he reloaded his gun. During this lapse of time--while he reloaded his gun--defendant had time to reflect on his actions, and a reasonable person could have controlled his passions.

6

> Under these circumstances, no reasonable jury could conclude that there was adequate provocation to cause defendant to shoot Christie, Tamara, and Courtney. A reasonable person would not have lost control under these circumstances. Further, there were lapses of time during which a reasonable person could have controlled his passions. Therefore, the trial court did not err by failing to grant defendant's request for a voluntary manslaughter instruction.

*Patterson, supra*, at 10-11.

Habeas corpus relief is available only if a petitioner is in custody in violation of the federal Constitution or laws. 28 U.S.C. § 2254(a). The federal courts have no power to intervene on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002) ("State law means what the state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.") (*citing Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991)). Within broad constitutional limits, a state has discretion to determine the elements of its own crimes, what proofs are essential to establish the elements of those crimes, and the available defenses. *See Patterson v. New York*, 432 U.S. 197, 210 (1977); *Sanford*, 288 F.3d at 861; *Warner v. Zent*, 997 F.2d 116, 133 (6th Cir. 1993). On habeas review, the federal courts are bound by the state courts' interpretation of their own laws. *Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975); *Warner*, 997 F.2d at 133. "The fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71 (1991); *accord Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief.").

The United States Court of Appeals for the Sixth Circuit, sitting *en banc*, has held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack." *Bagby v. Sowders*,

894 F.2d 792, 797 (6th Cir. 1990). The *Bagby* Court held that failure to instruct on lesser-included offenses in a non-capital case is reviewable in a habeas corpus action only if the failure results in a miscarriage of justice or constitutes an omission inconsistent with the rudimentary demands of fair procedure. *Id.; accord Tegeler v. Renico*, 253 Fed.App'x 521, 524 (6th Cir. 2007) (holding that, in a murder case, due process does not require a jury instruction on the lesser included offense of voluntary manslaughter); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (involuntary manslaughter instruction not required by due process); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (voluntary manslaughter instruction not required); *Samu v. Elo*, 14 Fed.App'x 477, 479 (6th Cir. 2001) (same). "[N]o clearly established Supreme Court authority requires lesser-included-offense instructions in non-capital cases." *Samu*, 14 Fed.App'x at 479.

As the Michigan Court of Appeals reasonably determined, a manslaughter instruction was not warranted because it was not supported by the evidence presented at trial. To show voluntary manslaughter in Michigan, a prosecutor must prove that a defendant killed in the heat of passion, that the passion was caused by adequate provocation, and that there was no lapse of time during which a reasonable person could control his passions. The evidence presented at trial did not raise a legitimate question of adequate provocation. The acts of provocation amounted to angry words between Petitioner and his on-again-off-again girlfriend, and seeing another man hold his young son. Neither of these items were unusual for Petitioner in his tumultuous relationship with the surviving victim. It was reasonable for the Michigan Court of Appeals to conclude that they did not rise to the level where a reasonable person could not have controlled his passions. Moreover, even if Petitioner could demonstrate adequate provocation and heat of passion, he cannot overcome the overwhelming evidence that established that there were lapses of time during which he could

8

have stopped his actions, yet he elected not to do so. The failure to instruct the jury on the lesser offense of manslaughter did not result in a miscarriage of justice nor did it offend the rudimentary demands of fair procedure. Petitioner is therefore not entitled to habeas relief regarding this claim.

### B. Exclusion of Defense Evidence.

Petitioner next asserts that his right to present a defense was violated when the trial court excluded evidence regarding his psychological history and the prescription medications he was taking at the time of the offenses. Petitioner does not claim that this evidence would have supported a legal insanity defense. Rather, Petitioner argues that this evidence was relevant to show that he did not have the mental capacity to form the intent required for murder.

The Michigan Court of Appeals rejected the claim on the merits:

> The trial court properly excluded evidence of defendant's psychiatric history and medications. The right to present a defense is a constitutional right. *People v. Anstey*, 476 Mich. 436, 460; 719 N.W.2d 579 (2006). But, "neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence. . . ." *People v. Adamski*, 198 Mich. App. 133, 138; 497 N.W.2d 546 (1993). Defendant must still comply with established rules of evidence and procedure. *People v. Hayes*, 421 Mich. 271, 279; 364 N.W.2d 635 (1984).
>
> In the past, the diminished capacity defense allowed a defendant, even though legally sane, to offer evidence of mental abnormalities to negate specific intent. *People v. Carpenter*, 464 Mich. 223, 232; 627 N.W.2d 276 (2001). However, in *Carpenter*, our Supreme Court recognized that it had never specifically authorized the use of the diminished capacity defense. *Id.* at 233. Rather, the *Carpenter* Court concluded that the Legislature had enacted a comprehensive statutory scheme for asserting a defense based on mental illness and that such scheme precludes evidence of mental abnormalities short of legal insanity to negate specific intent. *Id.* at 226. The *Carpenter* ruling effectively removed diminished capacity as a viable defense. *Tierney, supra* at 713, *citing People v. Abraham*, 256 Mich. App. 265, 271 n 2; 662 NW2d 836 (2003).
>
> In reaching its decision, the *Carpenter* Court necessarily addressed the constitutional aspects of precluding a defense based on diminished capacity.

9

*Carpenter, supra* at 240-241. The *Carpenter* Court recalled that in *Fisher v. United States*, 328 U.S. 463, 470; 66 S. Ct. 1318; 90 L Ed 1382 (1946), the defendant had requested a jury instruction in his murder trial to permit the jury to "'weigh evidence of his mental deficiencies, which were short of insanity in the legal sense, in determining the fact of and the accused's capacity for premeditation and deliberation.'" *Id*. at 240 (citations omitted). The United States Supreme Court upheld the trial court's denial of such a jury instruction, reasoning that a local trial court's decision to grant or deny a defendant's request for such an instruction is a matter of local concern rather than a matter affected by Constitutional limitations. *Id*. at 240. In light of *Fisher*, the *Carpenter* Court acted within its parameters in ruling that "the insanity defense as established by the Legislature is the sole standard for determining criminal responsibility as it relates to mental illness or retardation." *Id*. at 239. And *Carpenter* is binding precedent on this Court. *Tierney, supra* at 713.

In the instant case, defendant argues that the evidence at issue was logically relevant to the question of his guilt because it could negate specific intent. However, regardless of whether such evidence is relevant to defendant's culpability in the crime, the evidence is inadmissible under *Carpenter*. At trial, defendant acknowledged that professional evaluations of his competency and insanity revealed that he has a history of mental illness that falls below the threshold of the insanity defense. The forensic center, as well as defendant's own independent expert, determined that defendant was not insane when the offense occurred on July 23, 2003.

Under *Carpenter*, the insanity defense is the "sole standard for determining criminal responsibility as it relates to mental illness or retardation." *Carpenter, supra* at 239. But defendant did not assert an insanity defense, and Carpenter required that the trial court exclude evidence of any of defendant's abnormalities that do not reach the level of insanity. Accordingly, the trial court properly denied defendant's request to introduce evidence of defendant's mental deficiencies because they fell below the threshold of insanity.

Defendant argues that under *People v. Wilkins,* 184 Mich. App. 443, 448-451; 459 N.W.2d 57 (1990), the trial court should have allowed the jury to consider the effects of prescribed medications on defendant's mental condition. But defendant's reliance on *Wilkins* is misplaced. *Wilkins* applies where a defendant asserts a defense of involuntary intoxication. *Id*. at 448-451. Involuntary intoxication, unlike manslaughter, is tested by the same standard as legal insanity. *Id*. Here, defendant is not asserting a defense of involuntary intoxication or legal insanity. Rather, defendant requested an instruction on voluntary manslaughter and desired to present evidence of his medications to establish that he acted out of the heat of passion.

> Absent evidence of defendant's medications and psychiatric condition, defendant was still able to present a defense. At trial, defendant introduced evidence regarding his tumultuous relationship with Courtney and the events that fueled his passions on the day of the shootings. The jury convicted defendant of the lesser included offense of second-degree murder. Although second-degree murder, unlike voluntary manslaughter, requires malice, it does not require the first-degree murder elements of willfulness, premeditation or deliberation. M.C.L. 750.317; *People v. Bulmer*, 256 Mich. App. 33, 36-37; 662 N.W.2d 117 (2003); *People v. Bowman*, 254 Mich. App 142, 151; 656 N.W.2d 835 (2002), *quoting* M.C.L. 750.316(1)(a). In excluding evidence of defendant's psychiatric history and medications, the trial court did not deny defendant his constitutional right to present a defense. Rather, the trial court properly denied defendant the right to present evidence of his diminished capacity to negate specific intent pursuant to *Carpenter*.

*Patterson, supra*, at 12-13.

Federal law is clear on the right to present a defense. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id*. (*quoting Delaware v. Van Arsdall*,

475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(*quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Applying these principles, the Sixth Circuit has found that a state court does not deny a criminal defendant the right to present a defense when it prohibits him from presenting psychological evidence when such evidence is precluded by state evidentiary law and is not offered to support an insanity defense. *See Wong v. Money*, 142 F.3d 313, 324 (6th Cir. 1998). In *Wong*, the Sixth Circuit considered the case of an Ohio woman who did not present an insanity defense at trial, but sought to produce two psychologists as witnesses to establish the defense of diminished capacity. *Wong*, 142 F.3d at 313. The trial court denied the petitioner's request on the ground that Ohio law did not permit psychiatric testimony unrelated to the insanity defense to show that, due to mental illness, or some other reason, the defendant lacked the mental capacity to form the *mens rea* element of the crime charged. The Sixth Circuit determined that the petitioner's right to present a defense was not violated by the exclusion of the psychiatric testimony because (1) the evidence was inadmissible under Ohio law, (2) the petitioner was not precluded from testifying in her own defense, and (3) she was not precluded from introducing factual evidence about the alleged crime.

Petitioner's case is materially indistinguishable. The Michigan Court of Appeals squarely held that the precluded evidence was inadmissible as a matter of Michigan law, and that determination is not subject to review here. *Sanford*, *supra*. Petitioner was permitted to testify in his own defense regarding his mental state at the time he shot the three victims. He testified that he was upset and became emotional when he saw his girlfriend with another man holding his child.

Nor was Petitioner prevented from presenting evidence regarding the factual circumstances surrounding the crime.

At the root of Petitioner's complaint is that by channeling all mental-state defenses into the concept of legal insanity, state law unfairly prevented him from presenting evidence that would otherwise tend to negate an element of the offense. However, in *Clark v. Arizona*, 548 U.S. 735 (2006), the Supreme Court noted that states are "free to define the insanity defense" and may preclude a diminished-capacity defense. *Id*. at 772-773 n.42. The Supreme Court also acknowledged that "a State that wishes to avoid a second avenue for exploring capacity, less stringent for a defendant, has a good reason for confining the consideration of evidence of mental disease and incapacity to the insanity defense." *Id*. at 772. The Court found no violation of due process in a state's decision "to channel . . . expert testimony to consideration on the insanity defense . . . ." *Id*. at 778. *Clark* leaves little doubt that Michigan's decision to limit challenges to a defendant's capacity to commit a crime to the insanity defense does not violate due process. And because Petitioner concedes that the precluded evidence in his case was not being offered in support of an insanity defense, his right to present a defense was not violated.

The Michigan Court of Appeals adjudication of Petitioner's second claim was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court law.

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). The Court denies Petitioner a Certificate of Appealability because he failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable, or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V. ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

s/Marianne O. Battani
**HONORABLE MARIANNE O. BATTANI**
**UNITED STATES DISTRICT JUDGE**

**Dated:** December 17, 2010

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, Michael Patterson, and Counsel for the Respondent via ordinary U.S. Mail and/or ECF System.

                                           s/Bernadette M. Thebolt
                                           Case Manager